UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-01258-TWP-TAB |
| | ) | |
| JOHN STITZ, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss (Filing No. 11) filed by Defendant John Stitz ("Stitz") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff James Barnes ("Barnes") initiated this action alleging state law claims for fraud in the inducement, securities fraud, negligent misrepresentation, and unjust enrichment. (Filing No. 1). Barnes seeks compensatory and punitive damages, as well as restitution, against his former business partner, Stitz, who seeks dismissal of all claims and damages. For the reasons explained below, Defendant's Motion to Dismiss is **granted**.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Barnes as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

### A.     Factual Background

In 2002, Barnes and Stitz co-founded enVista, a company providing integrated supply chain and technology solutions to businesses globally. (Filing No. 1 ¶¶ 2, 7). Barnes was the co-owner and CEO of enVista from 2002 until 2022, when enVista sold one of its business units to

Korber Supply Chain Group ("Korber"). *Id.* ¶¶ 9–11. As a result of the Korber transaction, Barnes relinquished his role as CEO to Stitz, who obtained a promissory note payable by enVista in the amount of $3,166,236.00 plus interest. *Id.* ¶ 12–13. When the Korber transaction closed, Barnes was terminated from Korber but retained his interest as majority owner in enVista. *Id.* ¶ 16–17.

In March 2023, Barnes approached Stitz and expressed concern about enVista's financial performance. *Id.* ¶ 18. Barnes offered to help support the business as the company's financial performance continued to decline throughout 2023, but Stitz resisted. *Id.* ¶ 19–20. Instead, Stitz proceeded with the creation of enVista's 2024 Annual Operating Plan ("AOP"). *Id.* ¶¶ 18–26. Barnes alleges that Stitz directed enVista's Vice President of Finance to doctor the AOP to make it appear as though the company would generate nearly $730,000.00 in revenue during the first quarter of 2024. *Id.* ¶ 23. However, early drafts of the AOP showed enVista operating at a loss during this time. *Id.* The doctored AOP was presented to enVista's Executive Leadership Team on January 23, 2024, allegedly to conceal the full truth regarding the company's financial health. *Id.* ¶¶ 25–26, 37. The January 2024 AOP also projected $7.2 million in revenue from two major enVista customers despite losing their business in 2023. *Id.* ¶ 28–32.

On February 10, 2024, Barnes offered to return to enVista to support Stitz during this period. *Id.* ¶ 42. Stitz refused the offer and instead proposed that Barnes buy Stitz's shares in the company. *Id.* ¶¶ 43–44. Barnes agreed out of fear that his investments would be lost, and in March 2024, the parties signed a Membership Interest and Note Purchase Agreement (the "Agreement"). *Id.* ¶¶ 45, 54–55; (*see also* Filing No. 12-1). Under the terms of the Agreement, Stitz would resign as manager and CEO of the company, "Barnes would become sole Manager and assume day-to-day responsibility and authority for enVista," (Filing No. 12-1 at 2), and Barnes would be

2

"appointed as an officer of enVista with all power, authority and responsibility incident to the office of CEO & President," *id.* at 4.

In April 2024, Barnes learned that the AOP was based on assumptions allegedly known to be false at the time of the transaction and in the months leading up to it. (Filing No. 1 ¶ 61). In particular, Barnes learned that the company incurred losses of over $800,000.00 in February 2024. *Id.* ¶ 62. In September 2024, Barnes initiated this action to recover damages as a result of his reliance on the negligent misrepresentations and false projections provided in the AOP.

### B. The Agreement

Several provisions within the Agreement are in dispute here. First, paragraph 5 contains integration and no-reliance clauses, which provide:

> No party has made any representations or warranties to any other party with respect to or in connection with this Agreement, other than as expressly set forth herein, and each party agrees that it has not relied upon (and will not assert any claim based upon) any other purported representation or warranty. The transaction is being made on an "as-is" basis among sophisticated parties and no party shall have any liability after the Effective Time with respect to this Agreement or the subject matter hereof.

(Filing No. 12-1 at 7). Second, paragraph 6 of the Agreement contains a mutual release, which provides in part:

> [Each of Stitz, Barnes, and enVista] hereby releases and discharges each of [the opposing parties] of and from, and agrees not to assert or bring, any and all actions or causes of actions … whatsoever in law and equity against any of [the opposing parties] that [Stitz, Barnes, or enVista] may now have or hereafter can, will or may have for, upon or by any matter, cause or thing whatsoever arising out of, related to or in connection with enVista and its Affiliates, the Transferred Membership Interests, the Transferred Note, the LLC Agreement or Stitz's relationship and involvement with enVista prior to the Effective Time[.]

*Id.* at 7–8. Finally, paragraph 9 contains disclaimers, which provide in part:

> Each party acknowledges that it has had a reasonable opportunity to review this Agreement and has had a reasonable opportunity to consult with his legal counsel, accountants, and other advisors with respect to the terms and legal, financial, and

      tax implications of this Agreement. Each party further acknowledges and agrees that he, she or it has such knowledge and experience in financial and business matters to be capable of evaluating the transactions contemplated hereby and the terms and conditions of this Agreement. None of the parties hereto makes any assurance whatsoever concerning prospective value of the Transferred Membership Interests.

*Id.* at 9.

### C. Procedural Background

The Complaint asserts four claims for relief against Stitz: Count I alleges common law fraud in the inducement; Count II asserts a claim under Ind. Code § 23-19-5-1 for securities fraud; Count III alleges common law negligent misrepresentation; and Count IV alleges unjust enrichment. *Id.* ¶¶ 64–90. Plaintiff requests compensatory and punitive damages, restitution, and reasonable attorneys' fees and costs incurred in the action. Defendant seeks dismissal of all claims.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633.

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). The allegations must "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

4

As a general matter, the Court may consider only the plaintiff's complaint on a Rule 12(b)(6) motion. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). However, Rule 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). This rule applies to documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Rosenblum*, 299 F.3d at 661 (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

### III.   DISCUSSION

Stitz moves to dismiss all counts in the Complaint for failure to state a claim. (Filing No. 11). The Plaintiff responds generally that the Motion is premature and elected to focus on Defendant's specific arguments with respect to Counts I and II only. (Filing No. 14). Because Plaintiff failed to respond to the arguments with respect to Counts III and IV, any specific arguments in opposition to the dismissal of those counts are waived. *B.E. v. Vigo Cnty. Sch. Corp.*, 608 F. Supp. 3d. 725, 736 (S.D. Ind. 2022) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). The Court will address each claim in turn.

#### A.   Count I: Fraud in the Inducement

Count I alleges that Stitz fraudulently induced Barnes to purchase his membership interest at an inflated price by making knowingly false representations regarding enVista's financial health. (Filing No. 1 ¶¶ 64–68). To state a claim for fraud in the inducement under Indiana law, the plaintiff must allege the following: (1) the defendant made a false material representation of fact; (2) the representation was made with knowledge or reckless disregard of its falsity with an intent to deceive; and (3) the plaintiff reasonably relied upon the misrepresentation, which was the

proximate cause of his injury. *Accutech Sys. Corp. v. Bar Harbor Bank & Trust*, No. 1:18-cv-03917, 2019 WL 12496303, at *3 (S.D. Ind. July 29, 2019) (quoting *Judson Atkinson Candies, Inc. v. Kenray Assocs.*, 719 F.3d 635, 639 n.1 (7th Cir. 2013)).

In support of dismissal, Stitz argues that Barnes could not have reasonably relied on any representations made before the Agreement was executed because the Agreement contained an "integration clause"—a provision that the written document encompasses the complete agreement between the parties. (Filing No. 12 at 7). Stitz also argues the no-reliance clause and several disclaimers within the Agreement bar Barnes' from bringing the instant action. *Id.* Barnes' response is three-fold. First, he asserts that the Motion to Dismiss is premature because the record is incomplete, and the parties should be able to engage in discovery to "marshal all the relevant contracts." (Filing No. 14 at 3). Second, he asserts the issue of justifiable reliance is an issue for a jury to resolve. *Id.* at 3–4. Finally, he argues the integration clause does not bar his claims because "[w]hen the question of fraud is present, [a contract clause stating no oral representations were made] does not bind the alleged victim." *Id.* at 5 (citing *Jenkins v. Nebo Props., Inc.*, 439 N.E.2d 686, 694 (Ind. Ct. App. 1982)).

As an initial matter, the Court need not delay resolution of the Motion to Dismiss to allow discovery at this stage because the Agreement is attached as an exhibit to the Motion to Dismiss. Although Plaintiff does not refer explicitly to the Agreement in the Complaint, the Court may consider its specific terms in ruling on the Motion because it is central to Plaintiff's claims and referred to generally throughout the Complaint. *See* Fed. R. Civ. P. 10(c); *Rosenblum*, 299 F.3d at 661. The Complaint alleges that Stitz fraudulently induced Plaintiff into agreeing to purchase his shares in the company in a "transaction [which] was completed on March 6, 2024," (Filing No. 1 ¶ 55), implying the existence of a written instrument. Therefore, the Agreement is incorporated

6

by reference in the Complaint under Rule 10(c). To the extent Plaintiff suggests a separate contract exists for the sale of the promissory note, the Complaint lacks such an allegation, which is belied by the Agreement itself. The document plainly states that it governs the sale of "(1) Stitz's entire membership interest in enVista … and (2) Stitz's entire interest in the Promissory Note issued by enVista on September 22, 2022 as amended with an original principal amount of $3,166,236.00." (Filing No. 12-1 at 2). Accordingly, no additional discovery is necessary at this stage. Furthermore, the issue of justifiable reliance would be a question for the jury only if there were disputed material facts and only at the summary-judgment stage. Neither is the case here. Therefore, the Court may proceed to the merits.

Generally, when an agreement contains an integration clause, "the parol evidence rule prohibits courts from considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract." *Krieg v. Hieber*, 802 N.E.2d 938, 943 (Ind. Ct. App. 2004). "A party can overcome the effect of an integration clause by showing 'it had a right to rely on the alleged misrepresentations and did in fact rely on them in executing the release and/or integration clause.'" *Ballard v. Allstate Ins. Co.*, No. 1:12-cv-01666, 2013 WL 6388400, at *3 (S.D. Ind. Dec. 6, 2013) (quoting *Tru-Cal, Inc. v. Conrad Kacsik Instrument Sys., Inc.*, 905 N.E.2d 40, 45 (Ind. Ct. App. 2009)). Therefore, "whether the parol evidence rule applies is decided on a case-by-case basis, and is applied broadly to agreements as a whole." *Id.* (citing *Franklin v. White*, 493 N.E.2d 161, 166 (Ind. 1986)). Factors the Court must consider in determining the proper weight to be given to an integration clause include "the relative sophistication of the parties, whether the plaintiff had the opportunity to independently investigate prior representations, the presence of no-reliance provisions, and any other circumstances surrounding the agreement's execution." *Accutech*, 2019 WL 12496303 at *3 (citations and quotation marks omitted).

Here, the integration clause is entitled to conclusive weight and Barnes was not justified in relying on Stitz's representations. Barnes and Stitz were business partners, and Barnes was the former CEO of enVista. Barnes was also an investor and majority owner of enVista for the duration of the time period at issue. Therefore, he was a sophisticated purchaser of ownership interests such as those in the Agreement, adding significant weight to the integration clause.

Barnes had more than enough time to independently investigate the truth of enVista's financial condition and the representations made in the AOP. In his Complaint, Barnes alleges that as early as March 2023, Barnes was concerned that enVista may have been struggling financially, and he "regularly requested quarterly financial performance updates throughout 2023." (Filing No. 1 ¶ 18). Further, "[a]s enVista's financial performance continued to decline, Plaintiff offered to help the business … throughout 2023." *Id.* ¶ 19. When Stitz delayed responding to those requests, Barnes could have leveraged his position as majority owner to obtain information from other sources, including the Vice President of Finance whom Stitz allegedly instructed to conceal the company's financial statements. What's more, Barnes had at least three months after receiving the "doctored" AOP in January 2024 to confirm that the projections were based on accurate statements regarding the company's performance and market conditions.

Finally, the "no-reliance" clause in the Agreement precludes a finding of fraud. "Since reliance is an element of fraud, the clause, if upheld … precludes a fraud suit[.]" *Vigortone AG Prods. Inc. v. PM AG Prods, Inc.*, 316 F.3d 641, 645 (7th Cir. 2002). To the extent Barnes did rely on the faulty projections, that reliance was reckless and unjustified because he "closed his eyes to a known or obvious risk." *Id.* In fact, taking the facts in the Complaint as true, it appears Barnes agreed to purchase Stitz's shares in the company *because* of enVista's poor financial condition. Rather than relying on the inflated projections in the AOP, Barnes relied on his own "[f]ear[] that

his investments would be worthless if he did not rescue enVista," and he made a last-ditch effort to save his company by agreeing to purchase Stitz's ownership interests. (Filing No. 1 ¶ 45). He cannot now claim to have been fraudulently induced into doing so.

Plaintiff's argument that the no-reliance clause does not bind him is unpersuasive. The case he relies on for that proposition is over forty years old, and more recent cases make clear that the presence of no-reliance clauses, while not determinative on their own, are persuasive evidence that the plaintiff could not justifiably rely on extra-contractual statements allegedly made by the defendant. *See, e.g.*, *Judson Atkinson Candies*, 719 F.3d at 640–41 (citing *Prall v. Indiana Nat. Bank*, 627 N.E.2d 1374, 1376 (Ind. Ct. App. 1994), *Circle Centre Dev. Co. v. Y/G Ind., L.P.*, 762 N.E.2d 176, 179 (Ind. Ct. App. 2002); *Tru-Cal, Inc.*, 905 N.E.2d at 45). Viewing the facts in a light most favorable to the Plaintiff at the motion to dismiss stage, the allegations in the Complaint fail to state a claim for fraud in the inducement. Accordingly, Defendant's Motion to Dismiss Count I is **granted**.

  B. Count II: Securities Fraud

Count II alleges Stitz violated Ind. Code § 23-19-5-1, the general fraud provision of the Indiana Uniform Securities Act (the "Act"). (Filing No. 1 ¶¶ 69–78). The Act makes it unlawful to engage in fraudulent activity in connection with the offer, sale, or purchase of securities. Ind. Code § 23-19-5-1. The term "security" includes "investment contracts," which encompass the purchase and sale of interests in a limited liability company. Ind. Code § 23-19-1-2(28)(E). However, not all sales of interests in limited liability companies are securities. The Indiana Secretary of State and the Securities Commissioner have explained that in applying § 23-19-1-2(28)(E), the test laid out in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) applies to determine whether an interest is a security for purposes of the Act. *Adoption of Official Comments Under*

9

*the Indiana Uniform Securities Act*, 10-0194 AO (Ind. Sec'y of State, Sept. 17, 2010) (available at https://securities.sos.in.gov/ao-adoption-official-comments-under-in-uniform-securities-act) (last visited June 9, 2025); *see also Poyser v. Flora*, 780 N.E.2d 1191, 1196 (Ind. 2003). Under *Howey*, "[t]he test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." 328 U.S. at 301. In defining a security, "form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) (citing *Howey*, 328 U.S. at 298).

Stitz contends the membership units he sold to Barnes do not qualify as "securities" because upon purchasing the units, Barnes' expected profits were to be derived from his own managerial efforts rather than solely from the efforts of others. (Filing No. 12 at 14). In response, Barnes argues that profits need not be derived *solely* from the efforts of others, and while he will play a critical role at enVista, his returns on his investments will also depend upon the efforts of "hundreds of others." (Filing No. 14 at 7–8).

It is true that many courts have construed *Howey* liberally and permitted the finding of securities where the investor exerted *some* control in order to turn a profit. *See, e.g.*, *S.E.C. v. Koscot Interplanetary, Inc.*, 497 F.2d 473 (5th Cir. 1974); *Fargo Partners v. Dain Corp.*, 540 F.2d 912, 914 (8th Cir. 1976); *S.E.C. v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1983). In those cases, courts found that the transactions at issue would be investment contracts (and therefore, securities) if the investors' efforts were so minimal that they "lacked any real control over the operation of the enterprise." *Fargo Partners*, 540 F.2d at 914 (collecting cases). Here, by contrast, Barnes was expected to exert majority control as the "sole manager" and CEO of the company upon his acquisition of Stitz's shares. Thus, Barnes' expected profits were to be derived, in relevant part, from his own efforts as manager and CEO. Despite Barnes' argument that his

10

profits would be derived from the efforts of "hundreds of others" within the company, the Complaint lacks any facts alleging anyone other than Barnes and Stitz were involved in the management and control of enVista. Thus, the membership units he purchased do not qualify as securities, and Defendant's Motion to Dismiss Count II is **granted**.

### C. Counts III and IV: Negligent Misrepresentation and Unjust Enrichment

Finally, Counts III and IV allege that Stitz negligently mispresented enVista's financial health and was unjustly enriched by the sale of his promissory note to Barnes. (Filing No. 1 ¶¶ 79–90). Stitz moves to dismiss both claims because Barnes expressly disclaimed reliance on any extra-contractual representations, barring Count III, and because the existence of an express contract precludes a claim for unjust enrichment, barring Count IV. (Filing No. 12 at 9). Barnes failed to respond to these arguments and, therefore, waives any arguments in opposition thereto. *Vigo Cnty. Sch. Corp.*, 608 F. Supp. 3d. at 736.

Even absent a waiver, however, the claims would not survive. As explained above, Barnes could not have justifiably relied on Stitz's representations concerning enVista's financial condition given his sophistication, prior knowledge of enVista's financial condition, and the no-reliance clause in the Agreement. Moreover, Stitz is correct that the existence of an express contract bars the unjust enrichment claim. *See Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011) ("When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law."). Such claims also require the plaintiff to allege that "a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Id.* at 997. Barnes fails to allege that Stitz retained any benefit without payment with respect to the promissory note, so that claim must fail. Defendant's Motion to Dismiss Counts III and IV is, therefore, **granted**.

## IV. CONCLUSION

For the reasons explained above, Defendant John Stitz's Motion to Dismiss (Filing No. 11) is **GRANTED**. Counts I-IV in the Complaint (Filing No. 1) are **DISMISSED** without prejudice. Courts should "freely" grant leave to amend a pleading "when justice so requires". Fed. R. Civ. P. 15(a)(2). Accordingly, Plaintiff James Barnes is **GRANTED LEAVE** to file an Amended Complaint within fourteen (14) days from the date of this Order, if such filing would not be futile. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). If nothing is filed by that date, then the dismissal of Counts I-IV will be converted to a dismissal with prejudice and the Court will enter final judgment accordingly.

**SO ORDERED**.

Date: 6/9/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Timothy M Hansen
Hansen Reynolds LLC
thansen@hansenreynolds.com

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

Joseph J. Jacobi
HANSEN REYNOLDS LLC
jjacobi@hansenreynolds.com

Thomas Albert Janczewski, I
Hansen Reynolds LLC
tjanczewski@hansenreynolds.com

Scott E. Murray
Hoover Hull Turner LLP
smurray@hooverhullturner.com