**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JIMMY L. BARNES, II,<br>JJJB Holdings, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-01258-TWP-TAB |
| | ) | |
| JOHN STITZ, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**ORDER ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**</u>

This matter is before the Court on Defendant John Stitz's ("Stitz" or "Defendant") Motion to Dismiss the Amended Complaint (Filing No. 27) filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Jimmy L. Barnes II ("Barnes") and JJJB Holdings, LLC,[1] (together "Plaintiffs") filed an Amended Complaint alleging state law claims for fraud in the inducement, securities fraud, breach of warranty, negligent misrepresentation, and unjust enrichment (Filing No. 26). Barnes seeks compensatory and punitive damages, as well as restitution, against his former business partner, Stitz, who again seeks dismissal of all claims and damages. For the reasons explained below, Defendant's Motion to Dismiss the Amended Complaint is **granted**.

## I.    <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Plaintiffs as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

---

[1] The Amended Complaint adds JJJB Holdings, LLC, as a plaintiff, but no allegations are made concerning this party.

A.    **Factual Background**

Barnes and Stitz are co-founders of the company enVista (Filing No. 26 ¶¶ 2, 8). Barnes was the CEO for the first nearly twenty years of the company's existence. *Id.* ¶ 13. But, as a condition of the sale of one of enVista's business units in 2022, Barnes was required to resign as CEO to oversee the transition. *Id.* ¶ 15. During this time, Stitz assumed control as CEO and sole day-to-day decision maker of enVista. Stitz was enVista's CEO from September 1, 2022, to March 6, 2024, during this transition. *Id.* ¶ 8. Barnes remained an investor but had no operational involvement. *Id.* ¶¶ 22–23.

In 2023, as enVista's performance deteriorated, Barnes repeatedly sought financial information—requests which Stitz either ignored or delayed. *Id.* at ¶¶ 23–24. After enVista's financial performance began to decline, Barnes repeatedly offered to resume an active role in the company. *Id.* ¶ 25. Stitz initially declined the offers, then suggested that Barnes buy him out. *Id.* ¶¶ 24, 57. Barnes agreed to purchase Stitz's interest in the company, and the co-founders executed a Membership Interest and Note Purchase Agreement (the "Agreement") on March 6, 2024.

Paragraph 5 of the Agreement contains integration and no-reliance clauses, which state:

> No party has made any representations or warranties to any other party with respect to or in connection with this Agreement, other than as expressly set forth herein, and each party agrees that it has not relied upon (and will not assert any claim based upon) any other purported representation or warranty. The transaction is being made on an "as-is" basis among sophisticated parties and no party shall have any liability after the Effective Time with respect to this Agreement or the subject matter hereof.

(Filing No. 12-1 at 7). Paragraph 6 of the Agreement contains a mutual release, which provides in part:

> [Each of Stitz, Barnes, and enVista] hereby releases and discharges each of [the opposing parties] of and from, and agrees not to assert or bring, any and all actions or causes of actions … whatsoever in law and equity against any of [the opposing parties] that [Stitz, Barnes, or enVista] may now have or hereafter can, will or may

2

have for, upon or by any matter, cause or thing whatsoever arising out of, related to or in connection with enVista and its Affiliates, the Transferred Membership Interests, the Transferred Note, the LLC Agreement or Stitz's relationship and involvement with enVista prior to the Effective Time.

*Id.* at 7–8. Finally, paragraph 9 contains disclaimers, which provide in part:

Each party acknowledges that it has had a reasonable opportunity to review this Agreement and has had a reasonable opportunity to consult with his legal counsel, accountants, and other advisors with respect to the terms and legal, financial, and tax implications of this Agreement. Each party further acknowledges and agrees that he, she or it has such knowledge and experience in financial and business matters to be capable of evaluating the transactions contemplated hereby and the terms and conditions of this Agreement. None of the parties hereto makes any assurance whatsoever concerning prospective value of the Transferred Membership Interests.

*Id.* at 9.

Plaintiffs allege that Stitz doctored the business projections and that Barnes relied on those projections when deciding to purchase Stitz's shares. Stitz's deception of Barnes about the company's financial condition and clarity about Barnes' involvement in the company was not known until after he stepped down as CEO. Barnes remained involved as a "passive investor" while not acting as the CEO and was informed infrequently and irregularly about the company's performance (Filing No. 26 ¶¶ 23, 25). Specifically, unknown to Barnes, Stitz had directed the creation of a falsified 2024 Annual Operating Plan that projected nearly $730,000.00 in net operating income for the first quarter of 2024. *Id.* ¶ 29. In reality, internal data showed that enVista was projected to lose $2.4 million during that same quarter. *Id.* ¶ 47. Stitz deliberately included known-to-be-impossible revenue from clients who had already withdrawn or delayed their business. *Id.* ¶¶ 35–40. Stitz's misrepresentation includes that he falsely told Barnes that enVista would lose $300,000.00 in the first quarter of 2024, when he knew the company was projected to lose $1.2 million instead. *Id.* ¶¶ 50–51.

Despite knowing the projections were false, Stitz concealed the losses during buyout negotiations in early 2024. *Id.* ¶ 58. He specifically misrepresented anticipated losses and never disclosed that major customers had pulled out. *Id.* ¶¶ 35–40. Relying on those omissions and falsehoods, Barnes agreed to purchase Stitz's shares and a promissory note for $13,166,236. *Id.* ¶ 71. One day after the transaction closed, enVista revealed it was $3.4 million "unfavorable" to the Annual Operating Plan. A month later, Plaintiffs learned the full extent of the losses and falsified projections.

The Amended Complaint details communications between Stitz and Barnes regarding Barnes' return to the company and Stitz's strategy to address enVista's profitability. This includes Stitz's statement: "I have not read your entire message, but you are not coming back to enVista. That is not happening." (Filing No. 26 at ¶ 53). Stitz's strategy, allegedly, was to sell off business units, and when Barnes asked for more information about the finances, Stitz suggested the buyout. *Id.* ¶ 57. Stitz proposed the buyout without disclosing to Barnes that enVista was projected to lose $2.4 million in the first quarter of 2024. *Id.* ¶ 58. Barnes did not suspect that Stitz was dishonest at that point and had no way to know that Stitz had created false documents, including the 2024 Annual Operating Plan. *Id.* ¶¶ 60–61. Plaintiffs further allege that the "As-Is" and "no reliance" clauses were procured by fraud and thus neither is enforceable against Barnes. *Id.* ¶¶ 80–83.

**B.**     **Procedural Background**

On July 25, 2024, Barnes filed a Complaint in this Court against Stitz, alleging fraud in the inducement, securities fraud, negligent misrepresentation, and unjust enrichment (Filing No. 1). Stitz responded on September 16, 2024, by filing a Motion to Dismiss for Failure to State a Claim (Filing No. 11), which the Court granted (Filing No. 25). The Court dismissed all claims in the initial Complaint without prejudice, and granted Barnes leave to file an Amended Complaint if he

4

believed he could cure the defects in the dismissed claims. *Id.* Plaintiffs subsequently filed an Amended Complaint on June 20, 2025 (Filing No. 26), which alleges the four claims from the initial Complaint—fraud in the inducement, securities fraud under the Indiana Securities Act, negligent misrepresentation, and unjust enrichment—and adds a Breach of Warranty Claim. Stitz then filed the present Motion seeking dismissal of all claims (Filing No. 27).

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633.

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

As a general matter, the Court may consider only the plaintiff's complaint on a Rule 12(b)(6) motion. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). However, Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). This rule also applies to documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to his

claim. Such documents may be considered by a district court in ruling on the motion to dismiss."

*Rosenblum*, 299 F.3d at 661 (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

### III.     DISCUSSION

The Amended Complaint alleges a breach of warranty claim which details misrepresentations made by Stitz regarding the financial condition of enVista and Barnes' lack of management responsibility while Stitz was CEO. Stitz argues that the tort claims in the Amended Complaint are expressly barred by the parties' Agreement, which includes integration clauses, waivers, releases, and non-reliance provisions that bind Barnes, a sophisticated businessman (Filing No. 27 at 1). Stitz also argues that the Securities Act claim fails because the limited liability membership interests do not qualify as "securities" under the Act. *Id.* 1–2. Stitz maintains that the Court should dismiss all claims with prejudice (Filing No. 28 at 12).

Plaintiffs respond that they have stated a claim for fraud in the inducement with new allegations clarifying that Stitz actively concealed his fraud so that Barnes could not discover it (Filing No. 31 at 5). They also contend that the membership interests are securities because the Amended Complaint alleges that not all members were actively engaged in enVista's management, and Barnes was not involved at all during the relevant period. *Id.* at 9. Plaintiffs argue that they have stated a claim for breach of warranty if either Count I or Count II survives. And even if neither does, Stitz breached his fiduciary obligations to enVista, which would have a materially adverse effect on his ability to respond to an audit, so dismissal of Count III is unwarranted. *Id.* at 11.

Plaintiffs also argue that the Amended Complaint alleges the no-reliance clause itself was procured by fraud and Barnes justifiably relied on Stitz's misrepresentations in agreeing to the purchase. *Id.* at 12. Finally, Plaintiffs argue that, because they specifically allege that the

6

Agreement was procured through fraud, and that there is a challenge to its enforceability, they have stated a claim for unjust enrichment because Stitz "offloaded a nearly worthless promissory note at full value" to Barnes. *Id.* at 13.

The Court will first discuss the claims of fraudulent inducement, violation of Indiana's Securities Act, negligent misrepresentation, and unjust enrichment, before turning to the breach of warranty claim.

### A.       Count I: Fraud in the Inducement

This Court previously concluded that the integration clause was entitled to conclusive weight, Barnes was not justified in his reliance on Stitz's projections as a sophisticated purchaser of ownership interests, and the "no-reliance" clause in the Agreement precluded a finding of fraud (Filing No. 25 at 8). Those conclusions remain.[2]

Unfortunately for Barnes, he has not cured the deficiencies in his initial Complaint. At this stage of the proceedings, the Court accepts as true Barnes allegations that he was not receiving regular updates and that Stitz intentionally covered up the losses, but it does not change Barnes' position as a sophisticated purchaser who had time to do his own independent verification of the projections. If Stitz was withholding information, that should have been reason to delay signing the Agreement rather than signing an agreement with a no-reliance clause out of "fear[] that his investments would be worthless if he did not rescue enVista." (Filing No. 26 ¶ 59). Because he was, in fact, relying on assurances made outside of the Agreement: "*In reasonable reliance* that

---

[2] Factors the Court must consider in determining the proper weight to be given to an integration clause include "the relative sophistication of the parties, whether the plaintiff had the opportunity to independently investigate prior representations, the presence of no-reliance provisions, and any other circumstances surrounding the agreement's execution." *Accutech Sys. Corp. v. Bar Harbor Bank & Tr.*, No. 18-cv-3917, 2019 WL 12496303, at *3 (S.D. Ind. July 29, 2019) (citations and quotation marks omitted). Here, the integration clause is entitled to conclusive weight, and Barnes was not justified in relying on Stitz's representations. Barnes and Stitz were business partners, and Barnes was the former CEO of enVista. Barnes was also an investor and majority owner of enVista for the duration of the time period at issue. Therefore, he was a sophisticated purchaser of ownership interests such as those in the Agreement, adding significant weight to the integration clause (Filing No. 25 at 7–8).

the 2024 [Annual Operating Plan] was prepared in good faith Plaintiff agreed to purchase Defendant's membership interest and the associated promissory note for a total consideration of $13,166,236." *Id.* ¶ 70 (emphasis added). The no-reliance clause still precludes a finding of fraud, and there are no allegations that Stitz fraudulently included it in the contract.

As Stitz points out in his reply, this was a freely negotiated contract between the parties (Filing No. 33 at 9), and Barnes does not allege otherwise. The factual allegations in the Amended Complaint cannot overcome the Agreement's clauses, which the Court previously found bar the fraud in the inducement, negligent misrepresentation, and unjust enrichment claims (*see* Filing No. 25 at 11 ("Barnes could not have justifiably relied on Stitz's representation concerning enVista's financial condition given his sophistication, prior knowledge of enVista's financial condition, and the no-reliance clause in the Agreement.")).

Plaintiffs rely on *Tru-Cal v. Conrad Kacsik Instrument Systems* for the proposition that fraud in the inducement negates any integration clause (Filing No. 31 at 6 (citing 905 N.E.2d 40, 46 (Ind. App. 2009))). But as Stitz highlights, that case had an agreement *without a no-reliance clause*, and the false statements were made under oath to a court. The Seventh Circuit explicitly distinguished the agreement in *Tru-Cal* from other agreements because it "did not contain a no-reliance or disclaimer provision." *Judson Atkinson Candies, Inc. v. Kenray Assocs., Inc.*, 719 F.3d 635, 642 (7th Cir. 2013). The freely contracted no-reliance clause requires this Court to **grant** Stitz's Motion to Dismiss for Count I: fraud in the inducement.

## B.     Count II: Securities Fraud

Barnes seeks to clarify the membership structure of enVista so that the Court will find that Barnes' purchase of Stitz's membership interest is a security under Indiana's security laws. Specifically, he argues that under the plain language of the current statutes, the enVista

membership interests are "securities" under Indiana Code § 23-19-1-2(28)(E) (Filing No. 31 at 9) and that the administrative order relied on by the Court in its previous order is "*ultra vires*." He further argues that the official comments state that, when seeking interpretive guidance, the Court should consider the Predecessor Act, and that under the Predecessor Act, the membership interests are "securities." *Id.* at 9.

Stitz replies that the Indiana legislature expressly adopted the comments in Indiana Code § 23-19-1-5, stating that the comments may be consulted by the courts (Filing No. 33 at 6). Stitz also disagrees with Plaintiffs' interpretation of the comments and argues that the language in the Predecessor Act does not trump the current act or the official comments. *Id.* Stitz argues that the current act requires the *Howey* test to be satisfied for a limited liability company interest to qualify as an investment contract, and thus a security. *Id.* at 7.

The Court agrees with Stitz's interpretation of the official comments. "In applying IC 23-l 9-l-2(28)(E), with respect to determining whether an interest in a limited liability company or an interest in a limited liability partnership is a 'security', *it is not the intention of the drafters to change the application of the Howey analysis*." *Adoption of Official Comments Under the Indiana Uniform Securities Act*, 10-0194 AO (Ind. Sec'y of State, Sept. 17, 2010) (available at https://securities.sos.in.gov/ao-adoption-official-comments-under-in-uniform-securities-act) (last visited March 26, 2026) (emphasis added). The Court finds that the *Howey* test still determines whether an interest is a security for purposes of the Act.

The allegations in the Amended Complaint make clear that Barnes was not actively engaged in the management of enVista as a member of the limited liability company and that Stitz did not even read all of Barnes' communications (Filing No. 26 ¶¶ 100–03). But none of the new factual allegations change the Court's initial analysis. The Court's *Howey* analysis (Filing No. 25

9

at 10–11) remains unchanged because, upon purchasing the membership units, Barnes expected his profits to be derived from his efforts as the sole member of the limited liability company and CEO. Defendant's Motion to Dismiss Count II is **granted**.

### C.    <u>Counts IV and V: Negligent Misrepresentation and Unjust Enrichment</u>

Counts IV and V fare no better. Plaintiffs, again relying on *Tru-Cal*, assert that under Indiana law, even an integration or no-reliance clause cannot shield a party from liability where fraud or misrepresentation induced their inclusion in the contract (Filing No. 31 at 12 (citing *Tru-Cal*, 905 N.E.2d at 46)). As the Court discussed earlier, because of the no-reliance clause in the Agreement, Barnes was not justified in relying on Stitz's business projections, and the negligent misrepresentation claim (Count IV) must fail.

Plaintiffs also argue that the determination of whether reliance was justifiable is typically a fact question not suitable for resolution on a Rule 12(b)(6) motion (Filing No. 28 at 12). Plaintiffs specifically argue that Stitz's assertion that Barnes "'closed his eyes to a known risk' is not supported by the allegations and improperly asks the Court to weigh evidence." *Id.* However, that is not only Stitz's assertion—it was the Court's in its previous order. (Filing No. 25 at 8 (citing *Vigortone AG Prods. Inc. v. PM AG Prods, Inc.*, 316 F.3d 641, 645 (7th Cir. 2002))). Although the motion before the Court is pursuant to Rule 12(b)(6), Federal Rule of Civ. P. 10(c) provides that documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to his claim, may be considered by a district court in ruling on the motion to dismiss." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). That is the case here. As the Court previously stated, Barnes' reliance on the projections was unjustified because of the no-reliance clause and that Barnes "closed his eyes to a known or obvious risk" as "it appears Barnes

agreed to purchase Stitz's shares in the company *because* of enVista's poor financial condition."
*Id.* (emphasis in original).

Furthermore, the Court previously addressed whether the issue of justifiable reliance should be a question for the jury. The issue of justifiable reliance would be a question for the jury only if there were disputed material facts and only at the summary judgment stage. Neither is the case here (*see* Filing No. 25 at 7).

The unjust enrichment allegations remain unchanged in the Amended Complaint; therefore, because the Court again finds the underlying Agreement enforceable, the Court's analysis of the unjust enrichment claim from its previous order is unaffected (Filing No. 25 at 11). The express, enforceable contract bars the unjust enrichment claim. The Motion to Dismiss is **granted** as to Counts IV and V.

D.    **Count III: Breach of Warranty**

In the breach of warranty claim, Plaintiffs rely on the Conflicts Warranty in the Agreement and allege that Stitz breached this warranty in two ways. Barnes argues that Stitz's false statements constituted common law fraud under Indiana law and violated Indiana securities laws (Filing No. 26 ¶¶ 117–18). They also contend that Stitz's employment agreement with enVista was material. By knowingly misrepresenting enVista's financial standing to a signatory (enVista), Plaintiffs argue that Stitz, in lying to both Barnes and enVista, breached his duties of loyalty and candor in a material agreement. *Id.* ¶¶ 120–23.

The relevant portion of the Agreement is:

b. *Conflicts*. The execution, delivery and performance by Stitz of this Agreement and the transactions contemplated hereby will not (A) violate (1) any provision of law, statute, rule or regulation the effect of which would be to cause or be reasonably expected to have a material adverse effect on the ability of Stitz to perform any of its obligations under this Agreement or (2) any order of any governmental authority having proper jurisdiction over Stitz, (B) violate or be in

11

conflict with, result in a breach of or constitute (alone or with notice or lapse of time or both) a default under any indenture, loan agreement or other material agreement to which Stitz is a party or by which it or any of its property is or may be bound (assuming any required consent of FMB is obtained).

(Filing No. 28-1 at 6).

Stitz argues this claim fails because "the warranty states only that the 'execution, delivery and performance by Stitz of the Agreement' would not result in a breach or default of any other material agreement." (Filing No. 28 at 11). He contends that the alleged misrepresentations—even if they breached Stitz's employment agreement with enVista—occurred outside the Agreement, so Stitz's execution, delivery, and performance of the Agreement did not cause a breach of his employment agreement. *Id.*

In response, Plaintiffs argue that if either Count I or Count II survives the Motion to Dismiss, then the breach of warranty claim must survive (Filing No. 31 at 10). Because neither does, the Court need not address this argument. Even with the dismissal of Counts I and II, Plaintiffs argue that because Stitz breached his fiduciary obligations to enVista and because his employment agreement with enVista qualifies as a material agreement within the meaning of the warranty provision, this too triggered a breach of warranty. *Id.* at 11. Plaintiffs further argue that, among other obligations in the Agreement, Stitz agreed to remain at enVista in a temporary consulting role and to provide reasonable assistance to enVista in responding to an audit, which would be materially adversely affected by a breach of his duty of honesty and candor. *Id.*

Stitz replies that he complied with obligations under the Agreement to transfer his membership interest and the promissory note to Barnes, and that those transfers did not conflict with any applicable law or contract (Filing No. 33 at 8). He characterizes Plaintiffs' argument as one that focuses on past actions: "[H]e is arguing that certain actions allegedly taken by Stitz prior to the transfers were fraudulent." *Id.* Stitz asserts that Plaintiffs cannot convert the Conflicts

12

Warranty into a warranty about enVista's financial condition because the parties expressly disclaimed that warranty through other contract provisions. *Id.* at 9.

The Court agrees. The warranty provision only covers the actions required by the Agreement. No actions Stitz performed pursuant to the Agreement (*i.e.*, the transfer of membership interest and promissory note) violated his employment agreement. Thus, as Stitz argues, the alleged misrepresentations all occurred outside of the Agreement and do not support a claim for breach of the Conflicts Warranty. The motion to dismiss Count III is **granted**.

### IV.   CONCLUSION

For the reasons explained above, Defendant John Stitz's Motion to Dismiss the Amended Complaint (Filing No. 27) is **GRANTED**.

Plaintiff Jimmy L. Barnes II was given an opportunity to file an amended complaint, and his most recent pleading also fails to allege sufficient claims against Stitz.[3] Based on its analysis of the claims raised in the Amended Complaint above, and the discussion in the Court's first Order on Defendant's Motion to Dismiss (Filing No. 26), the Court finds that further opportunities to amend would be futile. All claims in the Amended Complaint (Filing No. 26) are **DISMISSED with prejudice**.

Final judgment consistent with this Order will be issued under separate order.

**SO ORDERED.**

Date:   3/27/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

---

[3] "Generally, 'a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [his] complaint before the entire action is dismissed.'" *O'Boyle v. Real Time Resolutions*, 910 F.3d 338, 347 (7th Cir. 2018) (quoting *Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 519 (7th Cir. 2015)). But It was under no obligation to allow further amendments where doing so would be futile, as it would be here. See *Doermer v. Callen,* 847 F.3d 522, 528 (7th Cir. 2017).

Distribution:

Riley H. Floyd
Hoover Hull Turner LLP
rfloyd@hooverhullturner.com

Timothy M Hansen
Hansen Reynolds LLC
thansen@hansenreynolds.com

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

Joseph J. Jacobi
HANSEN REYNOLDS LLC
jjacobi@hansenreynolds.com

Thomas Albert Janczewski, I
Hansen Reynolds LLC
tjanczewski@hansenreynolds.com